UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JOSE PEREZ, JR., )<br>)<br>Defendant )<br>_____ ) | Criminal No.  15-10256-RGS<br>18-40034-TSH |

## MEMORANDUM AND ORDER ON DETENTION

**April 22, 2020**

Hennessy, M.J.

Following his assent to detention on two cases -- an alleged violation of supervised release and a new prosecution for firearms and drugs -- Defendant Jose Perez, Jr.. moved for a detention hearing on April 9, 2020 in both cases. On April 14, 2020, I held a hearing, and received supplemental filings on April 20 and 21. For the reasons stated below, Perez is ordered detained.

### I.   BACKGROUND

The same conduct, recounted here, supports both the violation petition and indictment. On May 23, 2018, a Massachusetts State Trooper saw Perez in a car speeding, tailgating other cars, abruptly changing lanes, and cutting off other cars. [Dkt. 432 of 15-10256]. The trooper stopped the car. Id. Perez was driving; in the passenger seat was his brother, the registered owner of the car, and in the back seat was Christian Garcia. Id. While waiting for Perez to produce the registration and his license, the Trooper saw a glassine bag extending from Perez's pocket. Id. Following a question about its contents, the Trooper ordered Perez to produce the glassine bag. Id.  It contained two individual bags of a white powder the Trooper believed to be cocaine. Id. The Trooper removed and handcuffed Perez. Id. Other troopers arrived and asked

1

Perez if the substance was fentanyl.  Id.  Perez replied: "Nah.  I don't do that s\*\*t.  It's coke."  Id.  Perez's brother and Garcia were removed from the car.  Id.  During a search, troopers recovered a 9mm handgun, loaded with seven rounds, under a sweatshirt on top of the backseat.  Id.  The 9mm was reported stolen from New Hampshire.  Id.  In the glovebox, troopers also recovered a .40 caliber handgun with seven rounds and a partially obliterated serial number.  Id.  In the trunk, troopers recovered a pound of marijuana.  Id.  Perez and the passengers were originally charged in state court.  Id.  They were indicted federally on August 1, 2018 for Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §846, and Possession of Firearms in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. §924(c).  Id.

At the time of the offense, Perez was on supervised release ordered by this court following his conviction of Engaging in the Business of Dealing Firearms Without a License.  Perez had been sentenced to time served and 36 months of supervised release, and began supervision on February 23, 2018, three months before the offense.  Id.  An amended violation petition was filed on October 24, 2018 and Perez assented to detention on October 26, 2018.  [Dkt. 432 of 15-10256].  Perez was also on state probation imposed in a youthful offender proceeding for Firearm Violation with one Prior Violent/Drug Offense and Carrying a Loaded Firearm Without a License.  As a condition of his probation, he was wearing a GPS monitor.  In the state, Perez stipulated to violating probation and was sentenced to 6 months in jail.  Id.

### II.     THE GOVERNMENT'S MOTION TO DETAIN

On Docket No. 18-40034, the Government moved for detention, and originally Perez agreed to a voluntary order of detention without prejudice.  [Dkt. No. 29].  For the reasons that follow, I grant the Government's motion for detention.

### A.     The Bail Reform Act of 1984

A judicial officer may order a defendant detained pending trial if the United States establishes (1) by clear and convincing evidence that a defendant is a danger to the community, or (2) by a preponderance of the evidence that a defendant poses a serious risk of flight.  18 U.S.C. § 3142(f); see United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. 1986), cert. denied, 479 U.S. 978 (1986).  The judicial officer may then detain a person pending trial only if the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142(b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).

In making this determination the judicial officer must consider the following factors:

(1)    the nature and circumstances of the offense charged, including whether the offense ... involves ... a controlled substance [or] firearm;

(2)    the weight of the evidence against the person;

(3)    the history and characteristics of the person, including:

(A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and,

(B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

Where, as here, an indictment alleges an offense under the Controlled Substances Act offense punishable by ten or more years' imprisonment, or a section 924(c) offense, there attaches a presumption under 18 U.S.C. § 3142(e) that no condition or combination of conditions will reasonably assure the safety of the community. See United States v. Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988). Once the presumption attaches, a burden to produce "some [relevant] evidence" shifts to a defendant. United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). A defendant's introduction of some relevant evidence does not eliminate the presumption entirely. See United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991). Rather, the presumption remains in the case for consideration by the judicial officer. See Jessup, 757 F.2d at 383. The ultimate burden of persuasion remains with the United States. Id. at 381.

**B.     Analysis**

Applying the factors set forth in Section 3142(g), I find by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community, and by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Perez's appearance as required.

The first factor, the nature and circumstances of the offense charged, warrants detention. The Bail Reform Act requires the court to expressly consider whether the offense charged involved, among other things, a controlled substance or a firearm. Here, the offenses charged involved both guns and drugs. Perez was driving a car belonging to his brother and occupied by his brother and Garcia. From the glove compartment, troopers recovered a loaded .40 caliber handgun with a partially obliterated serial number. [Dkt. 432 of 15-10256]. Above the back seat was a loaded 9mm handgun reported stolen from New Hampshire. Id. From the trunk, troopers recovered a pound of marijuana. Id. Finally, Perez possessed a glassine bag containing two

smaller bags of what Perez admitted was cocaine. Id. Indeed, the grand jury found that the firearms were possessed in furtherance of a drug conspiracy by Perez, his brother and Garcia. [Dkt. 1 of 18-40034]. Hence, the first factor supports detention.

The second factor, the strength of the evidence, also supports detention. As the Government noted during oral argument, the allegations support Perez's joint possession of both the guns and marijuana. Indeed, Perez was driving and had control of a car, registered to his brother, from which these items were recovered. Consistent with the grand jury's finding of Perez's knowing possession is also evidence that Defendant and Garcia are members of the East Side Money Gang, and that both have tattooed "East Side" on their knuckles.[1] This evidence undermines Perez's suggestion of having no involvement in the guns and marijuana. Accordingly, I find that the weight of the evidence supports detention.

The third factor requires consideration of Perez's history and characteristics. There are some positives. Perez was born and raised primarily in Massachusetts. He earned a GED in 2016. His brother (also his co-defendant), mother and maternal half-siblings reside in Lynn, and Perez reports being close to them. He has an eight-year relationship with a girlfriend. Indeed, he proposes to live with her aunt. However, Perez has almost no job history and a serious criminal history. In 2012, the Lynn Juvenile Court continued without a finding and then dismissed a charge of ABDW. In 2014, the same court found Perez to be a Youthful Offender based on charges of ADW and Use of a Firearm in connection with a Felony. A probationary and suspended sentence were revoked after only 60 days for Firearm Violation with One Prior Violent/Drug Offense, Carrying a Firearm without a License, and Carrying a Loaded Firearm without a License. Perez was committed to DYS custody until age 21. In 2016, when Perez was

---

[1] The PTS report for Perez's brother does not mention gang affiliation or tattoos. However, his release conditions prohibit contact with any member of the East Side Money Gang. [Dkt. 18 of 18-40034 -TSH- 2]

5

19, he was charged in federal court with Engaging in the Business of Dealing in Firearms without a License.  In December 2017, he received a sentence of time served and was placed on supervised release for three years.  According to the Probation Department, in imposing sentence, Judge Stearns told Perez that the sentence should serve as a "wake-up call," that Perez must stop committing crimes.  [Dkt. 615 of 15-10256].  Far from heeding the court's admonition, three months after Perez began supervision, he was arrested for conduct that is the basis of the pending indictment.  Id.  That conduct was also the predicate for a violation of state probation and parole Perez was serving at the time of the instant offense.  It appears that Perez resumed participating in the illegal activities of the East Side Money Gang, the enterprise alleged in the 2015 indictment.  These activities included the possession and use of firearms and the distribution of controlled substances.  As noted, while on federal and state supervision, Perez was arrested in joint possession of both.  Further, the Government proffered that while on supervised release Perez obtained the "East Side" knuckles tattoo that signals his gang affiliation.  Perez's history and characteristics make two pertinent and related points:  Despite receiving leniency and the opportunity to turn around the direction of his life, Perez resumed dangerous criminal activities; and, Perez has little regard for court orders of conditions designed to encourage a law-abiding existence and protect others.

Finally, I consider the nature and seriousness of any danger Perez's release on conditions may pose.  I expect that on release Perez will resume gang activities, participate in drug distributions, possess stolen, defaced, loaded handguns, and generally violate the law, as the evidence suggests he did while on supervised release and state probation, which was monitored by GPS.  Perez has no regard for the law, the safety of others, or the efforts by the courts to deal leniently with him.  His release will pose a danger to those with whom he lives, the community,

and the police and Probation, already strained by current circumstances, when called upon to deal with Perez. Probation "strongly objects" to Perez's release. [Dkt. 615 of 15-10256].

I find that the 3142(g) factors and the rebuttable presumption establish that no condition or combination of conditions will reasonably assure Perez's appearance as required or the safety of the community.

        **C.**      **Defendant's Appeal for Release**

Perez argues that the Covid-19 pandemic is new information that warrants reopening the detention hearing under Section 3142(f). Defendant also reports that since November 2019, he has been ill with undiagnosed intestinal issues and as a result has lost 30 pounds. Because Perez had assented to detention, there was no prior detention hearing to reopen. However, given the gravity of Covid-19, I examine my detention decision in light of Perez's medically based claims.

Medical records from PCCF, where Perez is detained, and the PTS report reflect that Perez has a history of, and currently suffers from, asthma. [PTS Report at 3]. Perez uses an Albuterol inhaler twice daily and more frequently if he participates in physical activities. Id. In support of release, Perez argues that asthma makes him more vulnerable to Covid-19. I accept this argument. The Centers for Disease Control and Prevention report:

> People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19. COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease.

See CDC, Coronavirus Disease 2019, People Who Need Extra Precautions, People Who Are At Higher Risk, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (April 3, 2020). The CDC recommends moderate to severe asthma sufferers take common sense steps such as stocking up on and using inhalers and other

prescribed medications, avoiding triggers for asthma, cleaning and disinfecting frequently touched surfaces and avoiding crowds. Id.

While I am sympathetic to the valid health concerns of an asthmatic during the pandemic, I do not find that the pandemic and the risks it poses for Perez change the detention decision. Perez is already following CDC guidance. His medical records report that he uses an inhaler. The record reflects no shortage of Albuterol or other asthma medications at PCCF. Presumably, Perez is avoiding asthma triggers. The Government's submission shows that PCCF aggressively cleans housing units, has reduced the number of prisoners attending meals and using recreation areas simultaneously, provides staff and prisoners with masks, educates staff and prisoners on hygiene and social distancing, and isolates new prisoners. [Dkt. 145 of 18-40034]. Indeed, Perez wore a mask for the detention hearing from PCCF. This is an appropriate response that protects Perez's health, even during the pandemic.

On the other hand, the benefit of Perez's release plan is marginal. It does not, and no plan could, eliminate the risk of contracting Covid-19. Perez proposes that he reside with his girlfriend's aunt, Ms. Pelaez, and her two adult children in a Lynn apartment. It comprises the second floor and third-floor loft of a house. People come and go. For instance, Probation's virtual inspection of the apartment did not include the third floor where the adult children have bedrooms because the rooms are locked during the day – presumably because the children are away at that time. While release to the apartment would help social distancing, on balance I find that risk of danger Perez poses to the safety of others outweighs the medical benefit of better social distancing opportunities that may be realized from his release.

Perez also argues that undiagnosed intestinal issues warrant release. Medical records document that Perez has complained of abdominal/gastric issues, a lump on his jaw, sore throat,

8

headaches, and other ailments. These same medical records show that PCCF has been responsive to Perez's complaints. Perez been placed in observation in the medical unit and transported to Beth Israel Deaconess Hospital in Plymouth. Doctors and other medical providers have timely tested his blood and urine, conducted physical tests and exams, collected fecal samples, prescribed and administered medications, ordered a therapeutic diet, and generally have responded to Perez's complaints. It may be that Perez is dissatisfied; however, the records fail to show that the round-the-clock care available to Perez at PCCF is lacking and warrants his release, especially considering my assessment that Perez poses a danger to others.

For these reasons, the health issues Perez raises do not change my detention decision.

### III.  ORDER ON MOTION FOR RELEASE ON VIOLATION PETITION

Perez also seeks release on the pending supervised release petition. A person alleged to have violated supervised release may be released or detained under Section 3143(a)(1) of the Bail Reform Act. See Fed. R. Crim. P. 32.1(a)(6). The person bears the burden of establishing by clear and convincing evidence that if released he is not likely to flee or pose a danger to any other person or the community. Id. On the basis of my analysis of the Government's motion for detention and Perez's medically based arguments for release on the indictment, I find that Perez has failed to carry this burden. Perez is ordered detained until a final revocation hearing.

## IV.     CONCLUSION

For all the foregoing reasons, I find that, even considering Perez's current health issues and the Covid-19 Pandemic, there is no condition or combination of conditions that will reasonably assure the safety of any other person or the community, or that will reasonably assure Perez's appearance as required.  Accordingly, I grant the United States' motion to detain Perez.

**Jose Perez, Jr. is advised of his right to review of this Order.**

/ s / David H. Hennessy
David H. Hennessy
United States Magistrate Judge